65

DET O 19861

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

KEHINDE TYRU WOFFORD

       Petitioner

      v

LLOYD W. RAPELJE, WARDEN

      Respondent

_____/

Case:2:10-cv-12108
Judge: Battani, Marianne O
MJ: Majzoub, Mona K
Filed: 05-25-2010 At 03:20 PM
HC: KEHINDE TYRU WOFFORD V. LLOYD R
APELJE (KB)

BH

## PETITION FOR WRIT OF HABEAS CORPUS

———

## MEMORANDUM OF LAW

## IN SUPPORT OF

## PETITION FOR WRIT OF HABEAS CORPUS

———

KEHINDE TYRU WOFFORD
Inmate Number 261271
Petitioner in Pro Se
Saginaw Correctional Facility
9625 Pierce Road
Freeland, Michigan 48623

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


KEHINDE TYRU WOFFORD

          Petitioner

                                        Case:2:10-cv-12108
                                        Judge: Battani, Marianne O
     v                                  MJ: Majzoub, Mona K
                                        Filed: 05-25-2010 At 03:20 PM
                                        HC: KEHINDE TYRU WOFFORD V. LLOYD R
                                        APELJE (KB)

LLOYD W. RAPELJE, WARDEN

          Respondent

_____/


### PETITION FOR WRIT OF HABEAS CORPUS

──────

     PETITION FOR WRIT OF HABEAS CORPUS is filed under 28 U.S.C. §
2254 by a person in State custody. That person being KEHINDE TYRU
WOFFORD, Petitioner in the matter before this Honorable Court.

     In support of PETITION FOR WRIT OF HABEAS CORPUS, Petitioner
states:


1.] Petitioner KEHINDE TYRU WOFFORD is a United States citizen.


2.] Petitioner is currently incarcerated and confined within the
compound of Saginaw Correctional Facility. Prison number 261271.


3.] Respondent LLOYD W. RAPELJE, is Warden of Saginaw
Correctional Facility, located in Freeland, Michigan.


1

4.] Petitioner's incarceration arises from charges which Petitioner was tried by jury, convicted of. To wit: Two Counts Second-Degree-murder; Assault With Intent To Murder; Felony Firearm; Felon In Possession; Two Counts Armed Robbery, and Kidnapping. The offense allegedly occurred on September 12, 2005.

5.] Following trial by jury, on February 15, 2007, the Honorable Ulysses W. Boykin, presiding in the Circuit Court for the County of Wayne, sentenced Petitioner 60 to 90 years in prison for the first Second-Degree Murder, 50 to 75 years in prison for each Armed Robbery and for Assault With Intent To Murder and Kidnapping convictions, 6 to 10 years in prison regarding Felon In Possession. Judge Boykins further sentenced Petitioner two years for Felony Firearm to be served consecutive to other charges which were to be served concurrent. Trial Court vacated Petitioner's second Second-Degree Murder conviction due to co-defendant's conviction of Felony-Murder and Second-Degree Murder and both of Petitioner's Second-Degree Murder convictions arose from the death of the same individual. Docket No: 06-2236-01

6.] Petitioner appealed as right to Michigan Court Of Appeals who affirmed conviction and sentence on May 26, 2009 denied leave. Docket number 278246.

7.] On October 26, 2009, Michigan Supreme Court affirmed Michigan Court Of Appeals' decision and denied leave. Docket number 13 9067.

2

8.] Petitioner appeals to this Honorable Court the decision of Michigan Court Of Appeals, where Petitioner raised seven (7) issues. The issues are with merit, Michigan Court Of Appeals' denial resulted in a decision that was based on an unreasonable determination of facts in light of the evidence presented in the State court proceedings.

9.] Petitioner on Appeal of Right raised the following issues:

I

APPELLANT WAS DENIED HIS DUE PROCESS RIGHT TO A FAIR TRIAL BY THE ERRONEOUS ADMISSION OF A TAINTED LINEUP IDENTIFICATION BY COMPLAINANT DANIEL BURKS WHICH WAS PRECEDED BY A CUSTODIAL ENCOUNTER BETWEEN THE TWO

II

THE PROSECUTOR VIOLATED APPELLANT'S DUE PROCESS RIGHTS BY VOUCHING FOR CO-DEFENDANT SLY'S CREDIBILITY THROUGH HER STATEMENT AND ELICITATION OF TESTIMONY THAT SLY WAS ALLOWED TO PLEAD GUILTY BEFORE TRIAL IN EXCHANGE FOR "TRUTHFUL TESTIMONY" AND DEFENSE TRIAL COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE IN FAILING TO OBJECT

III

APPELLANT WAS DENIED A FAIR TRIAL BY THE JUDGE'S COMMENTS IN FRONT OF THE JURY WHICH DEMEANED THE DEFENSE AND BELITTLED DEFENSE COUNSEL AND DENIED APPELLANT A FAIR TRIAL

IV

THE PROSECUTOR ENGAGED IN MISCONDUCT BY ELICITING TESTIMONY SUGGESTING APPELLANT'S INVOLVEMENT IN OTHER ASSAULTIVE CRIMES IN VIOLATION OF A COURT ORDER, AND THE COURT ABUSED ITS DISCRETION IN DENYING A MISTRIAL

V

THE TRIAL COURT VIOLATED APPELLANT'S DUE PROCESS RIGHTS BY
DENYING A MISTRIAL WHERE THE PROSECUTOR REPEATEDLY ELICITED
IMPROPER TESTIMONY DESIGNED TO PREJUDICE APPELLANT

VI

APPELLANT WAS DENIED HIS STATE AND FEDERAL CONSTITUTIONAL RIGHTS
TO A FAIR TRIAL BY THE TRIAL JUDGE, WHO PERMITTED CO-DEFENDANT
HILL TO TESTIFY IN THE PRESENCE OF APPELLANT'S SEPARATE JURY

VII

THE CUMULATIVE EFFECT OF THE ERRORS IN THIS CASE DEPRIVED
APPELLANT OF HIS FEDERAL AND STATE DUE PROCESS RIGHTS

10.] Grounds for each issue raised are as follows:

ISSUE I

Petitioner and Burks had several occasions to be in contact with
each other. Burks misidentified Petitioner during a photographic
array.

ISSUE II

Prosecution vouched for witness. Thereby giving her word, and
placing her honor on the line before the jury that Sly would tell
the truth.

ISSUE III

Trial Court repeatedly belittled Defense Counsel in front of the
jury, who regards a Judge with high esteem.

ISSUE IV

Prosecution, despite a Court Order, elicited testimony from Sly
which suggested Petitioner was involved in other crimes. Trial
court denied mistrial which placed the court in error.

### ISSUE V

Prosecution repeatedly elicited testimony from witnesses in order to prejudice Petitioner. The mode of questioning by Prosecution was continuous although Defense Counsel's objections were sustained.

### ISSUE VI

Two separate juries were selected in order for Co-Defendants to be tried separately, yet, Defendant Hill was allowed to testify before Petitioner's jury.

### ISSUE VII

Although separate errors may only amount to harmless errors, the cumulative effect of the errors as a whole, rendered Petitioner's Due Process rights to be violated.


11.] Petitioner presented the issues herein before the Michigan Court Of Appeals for review as well as Michigan Supreme Court. Therefore, they are exhausted in State courts.


12.] Petitioner has no other pending Petition regarding the issues herein in any Federal or State Court.


13.] A Writ Of Certorari was not submitted by Petitioner.


14.] Petitioner did not testify during trial. Maintained not guilty of charges.


15.] Petitioner was represented during Preliminary Examination,

Trial and Sentencing by:

Warren E. Harris (P44199)
29777 Telegraph Road, #2500
Southfield, Michigan 48034

16.] Represented on Direct Appeal within Michigan Court Of Appeals by:

Jonathan B.D. Simon (P35596)
615 Griswold, Suite 1626
Detroit, Michigan 48226

17.] Petitioner filed Application For Leave To Appeal in Michigan Supreme Court in Pro Per.

18.] Petitioner has no future sentence to serve. Petitioner does have another conviction unrelated to the case at bar, which will be submitted to this Court for appellate review in the form of a Petition For Writ Of Habeas Corpus. Sentence date was April 26, 2007. Circuit Court docket number 06-011020-01; Michigan Court Of Appeals docket number 278240; Michigan Supreme Court docket number 139065.

19.] Petitioner requests this Honorable Court review and grant Writ Of Habeas Corpus, reverse Michigan Court Of Appeals' decision, remand Petitioner to Circuit Court for new trial based on the facts herein.

20.] Petitioner further requests appointment of Appellate Counsel should Writ of Habeas Corpus be granted.


Dated: 4/30, 2010                Respectfully Submitted,

                                 Kehinde T. Wofford #261271
                                 Saginaw Correctional Facility
                                 9625 Pierce Road
                                 Freeland, Michigan 48623

## VERIFICATION

I, Kehinde Tyru Wofford, Petitioner in the matter before this Honorable Court, declare the PETITION FOR WRIT OF HABEAS CORPUS, MEMORANDUM OF LAW IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS, is true to the best of my knowledge, information and belief. My signature attests to the facts herein.

Date: 4/30/ __, 2010

Respectfully Submitted,

Kehinde T. Wofford #261271
Saginaw Correctional Facility
9625 Pierce Road
Freeland, Michigan 48623

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEHINDE TYRU WOFFORD

      Petitioner

    v                                CIVIL CASE NO:

                                       HON:

LLOYD W. RAPELJE, WARDEN

      Respondent

_____/

MEMORANDUM OF LAW

IN SUPPORT OF

PETITION FOR WRIT OF HABEAS CORPUS

———

TABLE OF CONTENTS

                                                              PAGE

INDEX OF AUTHORITIES......................................... iii – vi

STATEMENT OF JURISDICTION............................... vii

STATEMENT OF QUESTIONS PRESENTED....................... viii – ix

STANDARD OF REVIEW...................................... x

STATEMENT OF FACTS..................................... 1 – 5

ARGUMENTS IN SUPPORT.................................... 6 – 41

RELIEF REQUESTED....................................... 42

ISSUES PRESENTED:

I

APPELLANT WAS DENIED HIS DUE PROCESS RIGHT TO A FAIR TRIAL BY THE ERRONEOUS ADMISSION OF A TAINTED LINEUP IDENTIFICATION BY COMPLAINANT DANIEL BURKS WHICH WAS PRECEDED BY A CUSTODIAL ENCOUNTER BETWEEN THE TWO?

II

THE PROSECUTOR VIOLATE APPELLANT'S DUE PROCESS RIGHTS BY VOUCHING FOR CO-DEFENDANT SLY'S CREDIBILITY THROUGH HER STATEMENT AND ELICITATION OF TESTIMONY THAT SLY WAS ALLOWED TO PLEAD GUILTY BEFORE TRIAL IN EXCHANGE FOR "TRUTHFUL TESTIMONY" AND WAS DEFENSE TRIAL COUNSEL CONSTITUTIONALLY INEFFECTIVE IN FAILING TO OBJECT?

III

APPELLANT WAS DENIED A FAIR TRIAL BY THE JUDGE'S COMMENTS IN FRONT OF THE JURY WHICH DEMEANED THE DEFENSE AND BELITTLED DEFENSE COUNSEL AND DENIED APPELLANT A FAIR TRIAL?

IV

THE PROSECUTOR ENGAGE IN MISCONDUCT BY ELICITING TESTIMONY SUGGESTING APPELLANT'S INVOLVEMENT IN OTHER ASSAULTIVE CRIMES IN VIOLATION OF A COURT ORDER, AND DID THE COURT ABUSE ITS DISCRETION IN DENYING A MISTRIAL?

V

THE TRIAL COURT VIOLATE APPELLANT'S DUE PROCESS RIGHTS BY DENYING A MISTRIAL WHERE THE PROSECUTOR REPEATEDLY ELICITED IMPROPER TESTIMONY DESIGNED TO PREJUDICE APPELLANT?

i

## VI

APPELLANT WAS DENIED HIS STATE AND FEDERAL CONSTITUTIONAL RIGHTS
TO A FAIR TRIAL BY THE TRIAL JUDGE,  WHO PERMITTED CO-DEFENDANT
HILL TO TESTIFY IN THE PRESENCE OF APPELLANT'S SEPARATE JURY?

## VII

THE CUMULATIVE EFFECT OF THE ERRORS IN THIS CASE DEPRIVE
APPELLANT OF HIS FEDERAL AND STATE DUE PROCESS RIGHTS?

INDEX OF AUTHORITIES

PAGE

ANCHOR v O'TOOLE, 94 F. 3d 1014 (1996)............... 23,28,40

BERGER v UNITED STATES, 295 US 78 (1935)............. 14,23,26

DAVIS v ALABAMA, 596 F. 2d 1214 (1979)............... 13

DERDEN v MCNEEL, 978 F. 2d 1453 (1992)............... 20

GILBERT v CALIFORNIA, 388 US 263 (1967)............. 7,11

GREEN v LOGGINS, 614 F. 2d 219 (1980)............... 7

GUEST v MCCANN, 474 F. 3d 926 (2007)................ 20

HARRIS v WAINWRIGHT, 760 F. 2d 1148 (1985)........... 36

HARRISON v MCBRIDE, 428 F. 3d 652 (2005)............. 20

HODGE v HURLEY, 426 F. 2D 368 (2005)................. 14,21,23

KING v BOWERSOX, 213 F. Supp 2d 1026 (2001).......... 31

KUNGYS v UNITED STATES, 485 US 759 (1998)............ 29,34

LINDEN v DICKSON, 287 F. 2d 55 (1961)................ 24,37

MATTHEWS v UNITED STATES, 518 F. 2D 1245 (1975)...... 14

MCADOO v ELO, 365 F. 3d 487 (2004)................... 13

NEIL v BIGGERS, 409 US 188 (1972.................... 6,7

PARISER v CITY OF NEW YORK, 146 F. 2d 431 (1945)..... 20

PATTERSON v STEWART, 122 S. Ct 406 (2001)........... 6

PEOPLE v BROCATO, 17 MICH APP 277 (1969)............ 35

PEOPLE v ERB, 48 MICH APP 622 (1973)................ 15

PEOPLE v GREEN, 74 MICH APP 607 (1977).............. 15

PEOPLE v HURST, 396 MICH 1,4,9 (1976)............... 32

PEOPLE v KACHAR, 400 MICH 78 (1977)................. 8

PEOPLE v MALONE, 180 MICH APP 347 (1989)............ 35

SIMMONS v UNITED STATES, 390 US 377 (1968).......... 6,8

INDEX OF AUTHORITIES -- CONT'D

PAGE

SIZEMORE v FLETCHER, 921 F. 2d 667 (1990)............ 14,24

SOLOMON v KEMP, 735 F. 2d 395 (1984)................. 23

STATE v LOTT, 498 US 1017 (1990)..................... 23

STOVALL v DENNO, 388 US 293 (1967)................... 6

STRICKLAND v WASHINGTON, 104 S. Ct 2052 (1984)....... 13,14,18,39

THIGPEN v CORY, 804 F. 2D 893 (1986)................. 7

UNITED STATES v BLANDFORD, 33 F. 3d 685 (1994)....... 28,29,35,40

UNITED STATES v BREITKREUTZ, 977 F. 2d 214 (1992).... 19

UNITED STATES v CARROLL, 26 F. 3D 1387 (1994)........ 15,18

UNITED STATES v CLARK, 982 F. 2d 965 (1985).......... 23,28

UNITED STATES v COLLINS, 78 F. 3d 1021 (1996)........ 13,35,36

UNITED STATES v CREAMER, 555 F. 2d 612 (1977)........ 16

UNITED STATES v DECOSTER, 444 US 944 (1979).......... 13

UNITED STATES v FRANCIS, 170 F. 3d 546 (1999)......14,15,18,35,39

UNITED STATES v GRIFFITH, 17 F. 3d 865 (1994)........ 38

UNITED STATES v HALBERT, 640 F. 2d 1000 (1981)....... 33,41

UNITED STATES v HEDGEPETH, 418 F. 3d 411 (2005)...... 19

UNITED STATED v KINGSTON, 971 F. 2d 481 (1992)....... 34

UNITED STATES v KREBS, 788 F. 2d 1166 (1986)......... 25

UNITED STATES v MAZZILLI, 848 F. 2d 384 (1988)....... 20,40

UNITED STATES v MEDICO, 557 F. 2d 309 (1997)......... 25,40

UNITED STATES v PARKER, 997 F. 2d 219 (1993)......... 38

UNITED STATES v RAVICH, 421 F. 2d 1196 (1970)........ 25,27

UNITED STATES v RODBERG, 122 F. 3d 1199 (1997)....... 16

UNITED STATES v SANDERS, 95 F. 3d 449 (1996)......... 35

INDEX OF AUTHORITIES -- CONT'D

PAGE

UNITED STATES v VICTORIA, 837 F. 2d 50 (1988)........ 20

UNITED STATES v WADE, 388 US 21 (1967).............. 6,8,39

UNITED STATES v YOUNG, 470 US 1 (1985).............. 28

U.S. v ALLEN, 269 F. 3d 842 (2001)................... 38

U.S. v BARILE, 286 F. 3d 749 (2002)................. 29

U.S. v BARTHOLOMEW, 310 F. 3d 912 (2002)............ 6

U.S. v ELDER, 309 F. 3d 519 (2002)................... 20

U.S. v ESTRADA-MARTINEZ, 11 Fed Appx 725 (2001)...... 20

U.S. ex rel WILLHITE v WALLS, 241 F.Supp2d 882 (2002). 31

U.S. v FILANI, 74 f. 3D 378 (1996)................... 20,40

U.S. v GARCIA-GUIZAR, 160 F. 3d 511 (1998).......... 15,17

U.S. v HAWKINS, 969 F. 2d 169 (1992)................. 31

U.S. v HITT, 981 F. 2d 422 (1992)................... 35

U.S. v KING, 148 F. 3d 968 (1998)................... 6,11

U.S. v LAYFAYETTE, 983 F. 2d 1102 (1993)............ 19

U.S. v MILNER, 962 F. 2d 908 (1992)................. 15

U.S. v NECOECHEA, 986 F. 2d 1273 (1993)............. 22

U.S. v PEADEN, 727 F. 2d 1493 (1984)................ 36

U.S. v PRETEL, 939 F. 2d 233 (1991)................. 31

U.S. v PRICE, 13 F. 3d 711 (1994)................... 20

U.S. v SANCHEZ, 118 F. 3d 192 (1997)................ 15

U.S. v TAVAKKOLY, 238 F. 3D 1062 (2001)............ 16.17

U.S. v THORNTON, 197 F. 3d 241 (1999)............... 17

U.S. v WILLS, 88 F. 3d 704 (1996)................... 15

WALKER v ENGLE, 703 F. 2d 959 (1983)............... 34,38

INDEX OF AUTHORITIES -- CONT'D

PAGE

WALKER v UNITED STATES, 490 F. 2d 683 (1974)......... 25

WASHINGTON v HOFBAUER, 228 F. 3d 689 (2000).......... 25,26

WEIMER v AMEN, 870 F. 2d 1400 (1989)................. 40

ZAFIRO v UNITED STATES, 506 US 534 (1993)........... 33


FRE 402.............................................. 35

FRE 404; MRE 404(b)................................. 40

CRIMINAL LAW 1166.11................................ 14

U.S.C.A. CONSTITUTIONAL AMENDMENTS VI,XIV........... 32

MICHIGAN CONSTITUTION 1963, art 1, §§ 17,20......... 32

U.S.C.A. CONSTITUTIONAL AMENDMENTS V, XIV........... 24,34

MICHIGAN CONSTITUTION 1963, art 1, § 17............. 34

U.S.C.A. CONSTITUTIONAL AMENDMENTS V,VI,XIV......... 14,38

## STATEMENT OF JURISDICTION

Petitioner KEHINDE TYRU WOFFORD, was convicted and sentenced on the charges herein within the Wayne County Circuit Court. Docket Number 06-2236-01. Petitioner filed leave to appeal within the Michigan Court of Appeals who denied leave on May 26, 2009. Docket Number 278246. Petitioner filed Application For Leave To Appeal within the Michigan Supreme Court, appealing Michigan Court Of Appeals' decision. Michigan Supreme Court denied leave on October 26, 2009. Docket Number 139067. Petitioner now comes before this Honorable Court in Pro Se, pursuant to 28 U.S.C. § 2254 which provides a one-year limitation to submit PETITION FOR WRIT OF HABEAS CORPUS. Petitioner files said in a timely manner within this Honorable Court. Therefore, this Court has jurisdiction to render decision accordingly, due to the one-year limitation deadline date being October 26, 2010.

## STATEMENT OF QUESTIONS PRESENTED

### I

WAS APPELLANT DENIED HIS DUE PROCESS RIGHT TO A FAIR TRIAL BY THE ERRONEOUS ADMISSION OF A TAINTED LINEUP IDENTIFICATION BY COMPLAINANT DANIEL BURKS WHICH WAS PRECEDED BY A CUSTODIAL ENCOUNTER BETWEEN THE TWO?

RESPONDENT SAYS "NO"
PETITIONER SAYS "YES"

### II

DID THE PROSECUTOR VIOLATE APPELLANT'S DUE PROCESS RIGHTS BY VOUCHING FOR CO-DEFENDANT SLY'S CREDIBILITY THROUGH HER STATEMENT AND ELICITATION OF TESTIMONY THAT SLY WAS ALLOWED TO PLEAD GUILTY BEFORE TRIAL IN EXCHANGE FOR "TRUTHFUL TESTIMONY" AND WAS DEFENSE TRIAL COUNSEL CONSTITUTIONALLY INEFFECTIVE IN FAILING TO OBJECT?

RESPONDENT SAYS "NO"
PLAINTIFF SAYS "YES"

### III

WAS APPELLANT DENIED A FAIR TRIAL BY THE JUDGE'S COMMENTS IN FRONT OF THE JURY WHICH DEMEANED THE DEFENSE AND BELITTLED DEFENSE COUNSEL AND DENIED APPELLANT A FAIR TRIAL?

RESPONDENT SAYS "NO"
PETITIONER SAYS "YES"

### IV

DID THE PROSECUTOR ENGAGE IN MISCONDUCT BY ELICITING TESTIMONY SUGGESTING APPELLANT'S INVOLVEMENT IN OTHER ASSAULTIVE CRIMES IN VIOLATION OF A COURT ORDER, AND DID THE COURT ABUSE ITS DISCRETION IN DENYING A MISTRIAL?

RESPONDENT SAYS "NO"
PETITIONER SAYS "YES"

### V

DID TRIAL COURT VIOLATE APPELLANT'S DUE PROCESS RIGHTS BY DENYING A MISTRIAL WHERE THE PROSECUTOR REPEATEDLY ELICITED IMPROPER TESTIMONY DESIGNED TO PREJUDICE APPELLANT?

RESPONDENT SAYS "NO"
PETITIONER SAYS "YES"

## VI

WAS APPELLANT DENIED HIS STATE AND FEDERAL CONSTITUTIONAL RIGHTS
TO A FAIR TRIAL BY THE TRIAL JUDGE,   WHO PERMITTED CO-DEFENDANT
HILL TO TESTIFY IN THE PRESENCE OF APPELLANT'S SEPARATE JURY?

## VII

DID THE CUMULATIVE EFFECT OF THE ERRORS IN THIS CASE DEPRIVE
APPELLANT OF HIS FEDERAL AND STATE DUE PROCESS RIGHTS?

RESPONDENT SAYS "NO"
PLAINTIFF SAYS "YES"

## STANDARD OF REVIEW

The standard of review for a habeas corpus petition is set forth in 28 U.S.C.A. § 2254(d). That section provides that the writ be granted if the state appeal:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States or,

(2) resulted in a decision that was based on an unreasonable determination of facts in light of the evidence presented in the State court proceeding.

## STATEMENT OF FACTS

Petitioner Kehinde Tyru Wofford along with co-defendants Leroy Tyron Wilson (aka Ace), Jovan Devall Sly and Gerald Hill (aka Slug) were charged with felony murder and first degree premeditated murder [MCL 750.316] as to complainant Quintin Tuggle, assault with intent to murder [MCL 750.83] as to complainant Daniel Burks, felon in possession of firearm [MCL 750.224f] and felony firearm [MCL 750.227b]. The events were alleged to have occurred on September 12, 2005 at 7749 Artesian in the City of Detroit. Preliminary examination was held on February 13, 2006 the Petitioner, Sly and Hill were notified of Prosecution's intent to seek additional counts of armed robbery [MCL 750.529] as to complainant Burks only and kidnapping [MCL 750.349] as to both complainants if supported by the evidence. (P1 8-11; T2 8-9).

Detroit Police Sergeant Michael Russell stated he received a call from 9th Precinct that Sly, who was in custody on an unrelated matter, wanted to speak to Homicide. Russell sent Investigator Dwight Pearson and later Officer Derek Thomas and Sergeant Earnest Wilson to speak with Sly. As a result of their reports, he had Sly brought in for an interview. On October 18, 2005, Sly told Russell that Petitioner and a person named Ace came to him with a plan to rob and kill some narcotics dealers on the west side, (of Detroit), of $300.000--$500.000 and 12 kilograms of cocaine. Petitioner, according to Sly, had an AK-47

1

and a 9 mm handgun. They left in Petitioner's van with two others he knew as "Q" and "Slug". Ace had a 9 mm, and "Q" had a 40 caliber. They went to a house on Artesian Street. Ace entered an SUV. The rest followed him to a gas station, where Ace filled a gas can. Both vehicles returned to Artesian. About 40 minutes later, two persons arrived. Ace and Slug ran towards them. Q drove the SUV. Petitioner jumped out with the AK-47 and ordered them into the vehicle. They drove a couple of blocks and pulled over on a side street. Sly took several large bundles of cash from the two persons. Petitioner took the handgun from Slug and placed it to Tuggle's head. The gun did not discharge. Petitioner, according to Sly, hit Tuggle with the handgun, ordered him from the vehicle and got the AK-47 and ordered Tuggle to the ground, As Tuggle was getting to the ground, Petitioner allegedly threatened to kill Burks. According to Sly, Petitioner allegedly fired at Tuggle and Burks ran. They drove back to the van, set the SUV on fire, went to a house and divided the money. (Pl 13-98)

On October 21, 2005 Russell obtained a statement from Hill. He reported receiving a call from Sly asking him to join Sly and Petitioner in hitting a lick on the west side. Hill went to Sly's house where Petitioner and Q arrived. They discussed the plan, picked up Ace and went to Artesian Street in a van and SUV. When the subject arrived, Hill and Ace exited the SUV armed with .9mm handguns and encountered the men. The SUV pulled up and Petitioner ordered them to get in. They drove a couple of blocks as they hit the men and went through their pockets. According to

Hill, Petitioner ordered Q to pull over, had Tuggle lay on the ground, and shot him in the head. Burks ran. Petitioner and Q shot at Burks. They all returned to the van, set the SUV on fire, drove away in the van and divided the money. (Pl 99-140)

Petitioner was bound over on original charges along with two (2) counts of armed robbery and two (2) counts of kidnapping. On September 11, 2006 an evidentiary hearing was conducted pursuant to Petitioner's motion to suppress Burks' identification. At the hearing Burks stated that on October 21, 2005 he reviewed photographic arrays. From one he identified Defendant Wilson and from another he identified Petitioner as the person in the front seat with an AK-47. On December 9, 2005 he was brought to 36th District Court to testify. As he was waiting in a holding cell, he saw Petitioner pass his cell while being placed in a nearby cell. The hearing was adjourned without testimony. As he was removed from the facility, Petitioner observed Burks. On December 21, 2005 Burks was brought to the Wayne County Jail to view a live line-up. There he again identified Petitioner as the person in the front passenger seat with the AK-47. Burks denied being told who to select in the line-up and denied receiving any consideration for his testimony.

Detroit Police Officer Sergeant Russell stated he and Sergeant Wilson were present at the photographic line-up and Burks identified Petitioner as the person in the front passenger seat with the AK-47. Sergeant Russell stated he was involved in directing Burks to appear in court and coordinated the corporal line-up that was to take place on December 9, 2005. Because

3

Petitioner was brought to court before the line-up could take place, the examination was adjourned. As Russell was in the process of removing Burks from the holding cell, they passed Petitioner's cell. Russell denied staging the encounter.

Detroit Police Officer Matthew Gnatek stated he was present at the live line-up and Burks identified Petitioner as the person with the AK-47 in the front passenger seat. Afterwards, Gnatek questioned Burks:

Q.   You picked Mr. Wofford in the live line-up. Have you ever seen him before?

A.   I've never seen him before I was incarcerated. I did see him when I was at 36th District Court. He walked past my cell.

Q.   What made you recognize him that day?

A.   I recognized him from the day I was shot.

Q.   What was he doing the day you were shot?

A.   He was the front seat passenger with the AK-47 rifle.

Following arguments, the court ruled neither line-up was impermissibly suggestive. Suppression of identification was denied. (E2 67-76) On December 4, 2006 Petitioner appeared for trial with Gerald Hill before separate juries. Petitioner was found guilty as charged except for counts I and II where he was found guilty of second-degree murder.. (Tl9 3-7).

Petitioner now seeks Habeas Corpus relief from Michigan Court of Appeals' afirmation of conviction and sentence.

On May 26, 2009 Michigan Court of Appeals denied leave. Docket number 278246. On October 26, 2009 Michigan Supreme Court affirmed Michigan Court of Appeals' decision. Docket number 139067. Petitioner respectfully requests this Honorable Court to review and reverse Michigan Court of Appeals' decision, issue a Writ of Habeas Corpus, remand Petitioner for new trial. Furthermore, appoint counsel.

Dated: 4/30 __, 2010

Respectfully Submitted,

Kehinde T. Wofford #261271

ARGUMENTS IN SUPPORT

I

APPELLANT WAS DENIED HIS DUE PROCESS RIGHT TO A FAIR TRIAL BY THE ERRONEOUS ADMISSION OF A TAINTED LINEUP IDENTIFICATION BY COMPLAINANT DANIEL BURKS WHICH WAS PRECEDED BY A CUSTODIAL ENCOUNTER BETWEEN THE TWO?

The issue was preserved by counsel's motion to suppress the identification. Factual findings at a suppression hearing are reviewed for clear error. U.S. v BARTHOLOMEW, 310 F. 3d 912 (C.A. 6 (Mich) 2002).

The dangers inherent in eyewitness identification by a witness exposed to suggestive identification procedures have long been recognized. Due process is denied when identification procedures used are unnecessarily suggestive and conductive to irreparable misidentification. UNITED STATES v WADE, 388 US 21; 87 S. Ct 1926; 18 L.Ed2d 1149 (1967); STOVALL v DENNO, 388 US 293; 87 S. Ct 1976; 18 L. Ed2d 1199 (1967); PATTERSON v STEWART, 122 S. Ct 406 (2001). An identification procedure will be set aside as impermissibly suggestive when it can give rise to a substantial likelihood of misidentification. SIMMONS v UNITED STATES, 390 US 377; 88 S. Ct 967; 19 L. Ed2d 1247 (1968); NEIL v BIGGERS, 409 US 188; 93 S. Ct 375; 34 L. Ed2d 401 (1972). The danger is that an initial improper identification procedure may result in misidentification and will unduly influence any later identification. U.S. v KING, 148 F. 3d 968 (1998).

Identification procedure can be unduly suggestive even absent intentional misconduct in arranging it. The exclusion of suggestive identification evidence is to prevent misidentification. not to deter misconduct. THIGPEN v CORY, 804 F.2d 893 (C.A.6, 1986); GREEN v LOGGINS, 614 F.2d 219 (C.A. 6, 1980).

In the instant case, Daniel Burks identified Petitioner from a corporal lineup after he had been exposed to Petitioner in an adjoining holding cell at 36th District Court. After a witness has been subjected to an unduly suggestive identification procedure, any subsequent identification by the witness is not admissible unless the prosecution can show by clear and convincing evidence that such identification has a basis independent of the prior identification procedure. GILBERT v CALIFORNIA, 388 US 2 63; 87 S. Ct 1951; 18 L. Ed2d 1178 (1967).


In NEIL v BIGGERS, 409 US 188 (1972) the United States Supreme Court discussed the factors to be considered when determining whether in-court identifications are reliable even though the pretrial confrontation procedure was suggestive. Those factors include 1) the opportunity of the witness to view the criminal at the time of the crime 2) the witness's degree of attention at the time of the crime 3) the accuracy of the witness's preidentification description of the criminal 4) level of certainty demonstrated by the witness 5) the length of time between the crime and the identification. These "factors"

described in BIGGERS, supra., became the test for in-court identification known now as the BIGGERS FACTORS. Accordingly, in the matter of PEOPLE v KACHAR, 400 Mich 78 (1977), the Court established a totality of the circumstances test in conjunction with BIGGERS, supra., for showing whether a proposed in-court identification has a basis independent of the influences of a prior suggestive procedure. KACHAR, supra., listed eight (8) factors to be considered which reviewing Court must recognize as applicable to the case at bar. To wit: 1) whether there is any prior relationship between the witness and the defendant 2) the opportunity to view the offense 3) the length of time between the offense and the disputed identification 4) the accuracy or discrepancies in the description given by the witness and the defendant's actual appearance 5) whether there was any previous proper identification or failure to identify the defendant 6) whether the witness previously identified another person as the offender 7) the nature of the offense and the state of mind of the witness at the point of viewing the offender 8) whether the defendant has any idiosyncratic or special features. Reviewing Court must weigh the various factors and determine whether the prosecution has established by clear and convincing evidence that a sufficient independent basis exists to purge the taint of any suggestive procedure. UNITED STATES v WADE; SIMMONS v UNITED STATES, supra.

Application of the BIGGERS and KACHAR supra., factors, to the evidence developed at the evidentiary hearing demonstrates the fact that Daniel Burks' in-court identification was irreparably tainted.

In reviewing the factors:

1] PRIOR RELATIONSHIP: Burks did not know Petitioner before September 12, 2005.

2] OPPORTUNITY TO OBSERVE: The incident was sudden and unexpected, involving only a brief midnight street encounter. During that time Burks was being assaulted and robbed.

3] LENGTH OF TIME BETWEEN OFFENSE AND CONFRONTATION: The lineup took place more than 3 months after the encounter, but less than 2 weeks after they shared adjoining cells at the 36th District Courthouse.

4] ACCURACY OR DISCREPANCIES IN THE DESCRIPTION: Immediately after the incident, Burks was not able to give a physical description of Petitioner. (El 82-86)

5] ANY IDENTIFICATION OF OR FAILURE TO IDENTIFY THE ACCUSED: Burks did previously identify Petitioner from a photographic lineup.

6] PRIOR IDENTIFICATION OF SOMEONE OTHER THAN THE ACCUSED: Record reveals none.

7] WITNESS' STATE OF MIND: The entire incident took only minutes at night while Burks and his uncle were being robbed and pistol whipped, It cannot be said that Burks' state of mind did not significantly impact his ability to perceive the assailants.

8] IDIOSYNCRATIC OR SPECIAL FEATURES: There were no special features of the shooter described by Burks. The description he gave could have matched thousands of Detroit residents.

Petitioner submits that Burks' identification was unduly suggestive and that he lacked an independent basis for identification at trial. Furthermore, Petitioner did not make a statement to support identification.

## DISCUSSION

Michigan Court Of Appeals denied leave, Petitioner contends that decision was based upon an unreasonable determination of facts in light of the evidence presented   at trial in regards to tainted lineup where Burks identified Petitioner after encountering Petitioner. In reviewing this issue, this Court must recognize  several essential factors which evidence before the Michigan Court Of Appeals as well, established.

1.] On September 13, 2005, Daniel Burks gave a precise detail of the events surrounding the kidnapping of himself and his uncle, the assault upon them, his uncle being shot and him being wounded. This description of events took place within the Detroit Police Department just hours after the offense against him. Throughout the entire interview, not once, did Daniel Burks make any reference to an AK-47 rifle being used against him. During the initial interview he stated "They all had hand guns". This was not the only interview Daniel Burks had with police. There were a total of three [3] separate occasions. Not once, did Daniel Burks mention someone having an AK-47. Yet, on October 21, 2005, one month after the assault, Daniel Burks was shown a photographic array and identified Petitioner as "The person in

the FRONT passenger seat with an AK-47." After being exposed to Petitioner in the 36th District Court, Daniel Burks was lead to a corporal lineup where he again identified Petitioner as "The person in the FRONT passenger seat with an AK-47". At trial, he testified to the same. Yet, when asked at trial whether or not he ever seen Petitioner before, Burks stated "Not until I encountered him at 36th District". Petitioner contends again in accordance with GILBERT v CALIFORNIA, supra Prosecution failed to prove independent basis of identification after Petitioner and Burks' encounter prior to the corporal lineup. The Court determined: In Court identification is admissible UNLESS it is based upon a pretrial confrontation between the witness and defendant that is both unpermissibly suggestive and unreliable. UNITED STATES v KING, 148 F.3d 698 (1998). In the case at bar, identification is both. A) the encounter was unpermissibly suggestive due to the fact it occurred minutes before Burks was shown a corporal lineup, and B) unreliable, which regards the number 2 factor which this Court must consider: 2.] Daniel Burks not once swayed from his statement to police, not once swayed at both the photographic and corporal lineups, and not once swayed during his testimony, that Petitioner was "The person in the FRONT seat with an AK-47". Yet, on September 13, 2005, just hours after the assault, Daniel Burks gave no description of Petitioner. Throughout the interviews, he clearly was able to recall "hand guns". Surely, it must be presumed that Burks would have remembered an AK-47 rifle just hours after the assault.   It

must further be recognized where Burks placed Petitioner in the
SUV. The FRONT seat. Upon review of record, this Court will
discover co-defendant Jovan Devall Say's testimony where he
placed Petitioner in the back seat behind Gerald Hill. Daniel
Burks failed to identify Petitioner to police on September 13,
2005, placed Petitioner in the FRONT seat, failed to mention an
AK-47 during the initial and two other statements given to
police, and furthermore, when Burks was shown a photographic
array conducted by Sergeant Michael Russell, Burks was told by
Russell that one of the six photographs was the perpetrator.
Burks continued to falter in identifying Petitioner, as record
will reflec. Yet, Michigan Court Of Appeals in spite of evidence,
affirmed Petitioner's conviction. Petitioner prays this Court
review all evidence on record, reverse Michigan Court Of Appeals'
decision, issue a Writ of Habeas Corpus to remand for new trial
eliminating Burks' in-court identification due to the fact
Petitioner did not offer a statement to police to confirm Burks'
identification or Petitioner's guilt.

Petitioner contends Burks' identification of Petitioner is
unreliable, the photographic and corporal lineup was unduly
suggestive, in-court identification must be vacated on the basis
herein.

ARGUMENTS IN SUPPORT

II

THE PROSECUTOR VIOLATE APPELLANT'S DUE PROCESS RIGHTS BY VOUCHING FOR CO-DEFENDANT SLY'S CREDIBILITY THROUGH HER STATEMENT AND ELICITATION OF TESTIMONY THAT SLY WAS ALLOWED TO PLEAD GUILTY BEFORE TRIAL IN EXCHANGE FOR "TRUTHFUL TESTIMONY" AND WAS DEFENSE TRIAL COUNSEL CONSTITUTIONALLY INEFFECTIVE IN FAILING TO OBJECT?

ISSUE PRESERVATION AND STANDARD OF REVIEW

——————

Counsel did not raise this issue in trial court. However, a defendant may raise ineffective assistance of counsel for the first time on appeal, because it involves a claim of constitutional error that could have been decisive of the outcome. UNITED STATES v DECOSTER, 444 US 944; 100 S. Ct 302; 62 L. Ed2d 311 (1979); DAVIS v ALABAMA, 596 F. 2d 1214 (1979); STRICTLAND v WASHINGTON, 466 US 688; 104 S. Ct 2052; 80 L. Ed2d 674 (1984). For ineffective assistance of counsel claims, the de novo standard of review applies to the existing record. MCADOO v ELO, 365 F. 3d 487 (6th Cir 2004). Since Defense Counsel failed to object, review is for plain error. UNITED STATES v COLLINS, 78 F. 3d 1021 (6th Cir (1996).

In STRICTLAND v WASHINGTON, supra, the Court stated the test for ineffective assistance of counsel:

A convicted defendant's claim that counsel's assistance was so defective as to require a reversal of a conviction or death sentence has two components; first, defendant must show that counsel's performance was deficient, requiring showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed defendant by the Sixth Amendment and, second, defendant must show that the deficient performance prejudiced the defense by showing that counsel's errors were so serious as to deprive defendant of a fair trial, a trial whose result is reliable. U.S.C.A. Constitutional Amendment VI; Criminal Law 1166.11; STRICTLAND, supra. Furthermore, because the defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim. MATTHEWS v UNITED STATES, 518 F. 2d 1245 (C.A.7 1975).

Petitioner intends to comply with the two prong test, but must first address the issue of prosecutor vouching for the witness, whereby, Petitioner submits Prosecutor, as a representative of the State has an obligation to be fair not only to the People, but to the accused as well. HODGE v HURLEY, 426 F.3d 368 (6th Cir 2005) citing BERGER v UNITED STATES, 295 US 78; 55 S. Ct 629; 79 L. Ed2d 1314 (1935). Furthermore, prosecutorial misconduct violates the rights of an accused to a fair trial and Due Process under the Fifth and Fourteenth Constitutional Amendments. SIZEMORE v FLETCHER, 921 F. 2d 667 (C.A.6, 1990) (granting relief where State Prosecutor commented on defendant being able to hire several attorneys).

A prosecutor may not personally vouch for the credibility of the State's witness UNITED STATES v FRANCIS, 170 F. 3d 546 (6th Cir 1999). Prosecutor vouching for a witness has not only happened on the Federal level, but State as well. For example, Michigan Court Of Appeals found prosecutorial misconduct warranting a new trial even in the absence of objection by defense counsel, where prosecutor commented "[I]f I thought a

witness would come into court and testify under oath a falsity of any kind, he would never be called as a witness on behalf of the people, never. The Court concluded: "Such vouching for the credibility of a witness by a prosecutor may be regarded as unsworn testimony and is impermissible." PEOPLE v ERB, 48 Mich App 622 (1973). Similarly, Michigan Court Of Appeals found reversible prosecutorial misconduct where the prosecutor demanded a guilty verdict "on behalf of the People, Officer Pack, and myself." PEOPLE v GREEN, 74 Mich App at 607 (1977). In essence, this solicitation is nothing more than a thinly veiled statement that the prosecutor vouched for the veracity of witness Pack and also buttressed this endorsement with the weight of his office." Id. U.S. v WILLS, 88 F. 3d 704 (1996); U.S. v MILNER, 962 F. 2d 908 (1992).

In UNITED STATES v FRANCIS, 170 F. 3d 546 (1998), the Court recognized prosecution disclosure to a jury that an accomplice has agreed to testify "truthfully" may be a more subtle, but equally improper attempt to   vouch for the credibility of a witness. Furthermore, Although the introduction of an accomplice's promise of truthfulness is not necessarily error, it is error if used by the prosecutor to suggest that the government has some special knowledge that the witness is testifying truthfully. UNITED STATES v SANCHEZ, 118 F. 3d 1 92 (1997); UNITED STATES v CARROLL, 26 F. 3d at 1387 (6th Cir 1994). Similarly, in U.S. v GARCIA-GUIZAR, 160 F. 3d 511 (1998) the Court affirmed the principle that "Included in the list of improper prosecutorial commentary or questioning is the maxim

that the prosecutor cannot vouch for the credibility of his witnesses to the effect that he has some special knowledge concerning a witness' truthfulness. U.S. v TAVAKKOLY, 238 F. 3d 1062 (2001). Generally, " [b]y calling a witness who testifies pursuant to an agreement requiring him to testify truthfully, the Government does not insinuate possession of information not heard by the jury and the prosecutor cannot be taken as having expressed his personal opinion on a witness' veracity." UNITED STATES v CREAMER, 555 F. 2d 612 (1977).

In UNITED STATES v RUDBERG, 122 F. 3d 1199 (1997) the Ninth Circuit found plain error requiring reversal even in the absence of defense counsel's objection where the prosecutor repeatedly elicited testimony that prosecution witnesses received reduced sentences under F R Crim P 35 for truthful testimony, implying that the prosecutor had verified the truthfulness of the testimony. In the case at bar, Prosecution informed the jury in her opening statement that "Jovan Sly pled guilty to second degree murder of Mr. Tuggle, armed robbery, assault with intent to murder Mr. Burks, and felony firearm in exchange for truthful testimony in this case." (T2 25). On direct examination of Sly she inquired whether, as part of the agreement, he was to testify truthfully (T7 82,83).

DISCUSSION

Jovan Sly, like the witness in RUDBERG, supra., told the jury he had already received leniency from the prosecutor before testifying "truthfully". This effectively disclosed that the Prosecutor had already decided his anticipated testimony would be the "truth", or the Prosecutor would not have allowed Sly to

16

plead guilty to lesser charges before Petitioner's trial. Michigan Court Of Appeals failed to recognize the fact that "Two types of "vouching" are forbidden: a prosecutor may not express her personal belief in the truthfulness of a witness, and a prosecutor may not imply that facts not before the jury lend a witness' credibility U.S. v THORNTON, 197 F. 3d 241 (1999). Sly was a key witness implicating Petitioner in the murder. Sly testified it was Petitioner's idea to commit the crime, that Petitioner supplied the plan, the vehicles and weapons, that he (Sly) accompanied Petitioner to the scene and assisted Petitioner in the commission of the crime and Sly shared in the proceeds from the crime. This was and is the "TRUTHFUL" testimony which Prosecution placed not only her prestige behind, but the Government's as well, in which the Court in GARCIA-GUIZAR supra., stated a Prosecutor may not do. Since Michigan Court Of Appeals denied leave on this issue, they agreed with Prosecutor that Sly told the truth and as well, placed the prestige of the Government behind Sly's testimony. A violation of Criminal Law 720(5) in accordance with GARCIA-GUIZAR; TAVAKKOLY, supra. Furthermore, there was and is no physical evidence tying Petitioner to the crime. As argued in ARGUMENT I, Daniel Burks' testimony has serious credibility flaws, and with Michigan Court Of Appeals and Prosecution standing behind the truth of Sly's testimony, Burks identification and location of Petitioner in the SUV, Defense Counsel was ineffective for failing to object. Counsel's failure to object cannot be sound trial strategy due to the fact Sly's

17

testimony was a crucial factor in Petitioner's conviction. In accordance with STRICTLAND, counsel fell below the standards of counsel guaranteed Petitioner for failing to object to Prosecution's vouching for witness. This prejudiced Petitioner due to the fact since Prosecution placed her and the Government's prestige behind Sly's testimony, a reasonable probability exists that the jury was influenced by Sly's "truthfulness", since Prosecution stated his testimony would be fact, violating what the Court determined in UNITED STATES v FRANCIS, and UNITED STATES v CARROLL, supra.

Therefore, Petitioner moves this Honorable Court to issue Writ Of Habeas Corpus to remand for new trial based on facts herein.

ARGUMENTS IN SUPPORT

III

APPELLANT WAS DENIED A FAIR TRIAL BY THE JUDGE'S COMMENTS IN
FRONT OF THE JURY WHICH DEMEANED THE DEFENSE AND BELITTLED
DEFENSE COUNSEL AND DENIED APPELLANT A FAIR TRIAL?

Issue Preservation and Standard of Review

———

The issue was preserved by Defense Counsel's motion for a
mistrial. (T 4 8-18). The grant or denial of a mistrial is
reviewed for abuse of discretion. U.S. v LAYFAYETTE, 983 F. 2d
1102 (1993). An abuse of that discretion will be found only where
the trial court's denial of the motion has deprived the
Petitioner of a fair trial. UNITED STATES v HEDGEPETH, 418 F. 3d
411 (2005). This Court reviews questions of constitutional law de
novo. UNITED STATES v BREITKREUTZ, 977 F. 2d 214 (6th Cir 1992)

In the case at bar, Defense Counsel attempted to impeach
complainant Daniel Burks with prior statements and preliminary
examination and evidentiary hearing testimony. Trial court sua
sponte interrupted Defense counsel constantly, regarding
Counsel's impeachment technique. (T 3 94, 97-98, 102-105, 117,
120, 123, 125-126, 128-130, 134, 144-147, 150) Defense Counsel
moved for a mistrial, maintaining the comments, gestures and
remarks to Defense Counsel were derogatory and demeaning which
placed unnecessary improper burdens on Counsel, interfered with
Counsel's trial strategy and created a negative impression of
Counsel and Petitioner in the minds of the jurors. (T 4 8-18)

It is widely recognized that a court's comments have a great potential for influencing a jury, considering the esteem in which judges are held and their role at trial. GUEST v MCCANN, 474 F. 3d 926 (2007); HARRISON v MCBRIDE, 428 F. 3d 652 (2005). Recognizing their role and esteem, the court must exercise caution so its questions or comments will not be prejudicial, unfair, or partial. U.S. v ELDER, 309 F. 3d 519 (2002); U.S. v PRICE, 13 F. 3d 711 (1994). The test inquires whether a judge's questions and comments may well have unjustifiably aroused suspicion in the mind of the jury as to a witness' credibility, and whether partiality quite possibly could have influenced the jury to the detriment of defendant's case. U.S. v ESTRADA-MARTINEZ, 11 Fed. Appx. 725 (2001); DERDEN v MCNEEL, 978 F. 2d 1453 (1992).

The Court has reversed numerous cases where judge's comments weakened the credibility of defendant or a defense witness. U.S. v FILANI, 74 F. 3d 378 (1996); PARISEN v CITY OF NEW YORK, 146 F. 2d 431 (1945); UNITED STATES v MAZZILLI, 848 F. 2d 384 (1988); UNITED STATES v VICTORIA, 837 F. 2d 50 (1988). Words or actions of trial court which demean Defense Counsel likewise deny defendant of a fair trial. Belittling Defense Counsel results in belittling a defendant and his claims or defenses. HARRISON v MCBRIDE, supra. Furthermore, trial judges who demean an attorney, so as to hold him up to contempt in the eyes of the jury destroy the balance of impartiality necessary for a fair hearing. UNITED STATES v VICTORIA supra.

DISCUSSION

———

In the instant case, Trial court's improper conduct cannot be deemed harmless. Defense Counsel's motive for line of questioning was to impeach Daniel Burks testimony. Which, Defense Counsel attempted. Defense Counsel had every reason to do so, for the fact that Daniel Burks was the only eyewitness to the shootings. He identified Petitioner throughout trial as the person in the front seat with the AK-47, while Jovan Sly, co-defendant whom Prosecution vouched his testimony would be truthful, testified Petitioner was in the back seat. Daniel Burks was unable to give any physical description of Petitioner to police just hours after the shooting. He further selected Petitioner from a lineup after several encounters prior to the preliminary examination. Impeachment of Daniel Burks' testimony was absolutely essential to the defense and went to the central issue at trial. The Judge's repeated interruption of Defense Counsel's cross-examination and the manner in which it took place could not help but diminish the importance of this testimony and Counsel's stature in the eyes of the jury. Trial Court exercised its biasness towards Defense Counsel due to the fact the Court determined in HODGE v HURLEY, 426 F. 3d 368 (2005), that "Prosecution may prosecute with earnestness and vigor -- indeed he should do so." Prosecution in the instant case exercised that privilege and exercised unfairly, with no interruptions from Trial Court. Consequently, when Defense Counsel attempted to

impeach Daniel Burks' testimony with earnestness and vigor, Trial Court interrupted with demeaning comments and belittled not only Defense Counsel, but further placed a reasonable probability that invited the jury to take the same attitude as Trial Court, and view Defense Counsel as nothing more than aggressive and an aggravation. At the same time, interruptions and comments served to bolster Daniel Burks' stature and credibility thereby discouraging the jury from evaluating testimony with a discerning eye. Standard jury instruction on comments of the court, (T17 90-91) does not cure the error. On a different issue, but same concept, the Court concluded that even if error is cured by instruction, court should consider any "traces which may remain." U.S. v NECOECHEA, 986 F. 2d 1273 (1993). Trial Court abused its discretion denying Defense Counsel's motion for mistrial, and Michigan Court of Appeals is in error as well for failure to recognize the fact evidence of Petitioner's guilt was not overwhelming and impeachment of Daniel Burks' testimony was vital. Michigan Court of Appeals errored in failing to recognize Prosecution was allowed to prosecute with earnestness and vigor, while Defense Counsel was belittled by Trial Court for doing the same.

Therefore, Petitioner requests this Honorable Court issue writ of habeas corpus to remand for new trial.

ARGUMENTS IN SUPPORT

IV

THE PROSECUTOR ENGAGED IN MISCONDUCT BY ELICITING TESTIMONY
SUGGESTING APPELLANT'S INVOLVEMENT IN OTHER ASSAULTIVE CRIMES IN
VIOLATION OF A COURT ORDER, AND DID THE COURT ABUSE ITS
DISCRETION IN DENYING A MISTRIAL?

Issue Preservation and Standard of Review

————

The issue was preserved by motion for a mistrial. (T7
18-28). Prosecutorial misconduct is reviewed de novo. UNITED
STATES v CLARK, 982 F.2d 965 (6th Cir 1985). The test is whether
it denied Petitioner a fair and impartial trial. SOLOMON v KEMP,
735 F. 2d 395 (1984). Refusal to grant the motion is reviewed for
abuse of discretion. ANCHOR v O'TOOLE, 94 F. 3d 1014 (6th Cir
1996).

The Prosecutor, as a representative of the State, has an
obligation to be fair to the accused. As Justice Sutherland
observed concerning the analogous duties of the United States
Attorney:

The United States Attorney is the representative not of an
ordinary party to a controversy, but of a sovereignty whose
obligation to govern impartially is as compelling as its
obligation to govern at all; and whose interest, therefore, in a
criminal prosecution is not that it shall win a case, but that
justice shall be done. As such, he is in a peculiar and very
definite sense the servant of the law, the twofold aim of which
is that guilt shall not escape or innocence suffer. He may
prosecute with earnestness and vigor -- indeed, he should do so.
But, while he may strike hard blows, he is not at liberty to
strike foul ones. It is as much his duty to refrain from improper
methods calculated to produce a wrongful conviction as it is to
use every legitimate means to bring about a just one. BERGER v
UNITED STATES 295 US 78; 55 S. Ct 629; 79 L. Ed2d 1314 (1935);
STATE v LOTT, 498 US 1017; 111 S. Ct 591; 112 L. Ed2d 596 (1990),
HODGE v HURLEY, 426 F. 3d 368 ( 6th Cir 2005).

Prosecutorial misconduct violates the rights of an accused to a fair trial and Due Process. US Const. Ams V, XIV; <u>SIZEMORE</u> v <u>FLETCHER</u>, 921 F. 2d 667 (CA 6, 1990); <u>LINDEN</u> v <u>DICKSON</u>, 287 F. 2d 55 (1961).

In the case at bar the court established rules of examination into co-defendant Jovan Sly's plea agreement and the extent to which Prosecution could inquire into aspects of other carjacking, robbery and homicide cases, which involved Petitioner and co-defendant Hill. Specifically, the parties and Sly were told not to implicate Petitioner and Hill in those offenses. (T6 103-113, 138-139). Consequently, against trial court's rules, during Sly's testimony, Prosecutor asked how Sly met Hill and Petitioner. Sly replied he met Hill in prison and Petitioner was a friend of the family he met after his release on parole. According to Sly, Petitioner was a "home boy" and they did things together. (T 7 14-16). Prosecutor then initiated the following exchange:

Q   So when he picked up the phone and called you and said I got a lick, that was usual or unusual?

A   It would be usual. (T 7 17).

Defense Counsel moved for a mistrial on the basis that Prosecutor violated the order by introduction of testimony regarding Petitioner's involvement in Sly's prior bad acts. Prosecutor replied that it was offered to show the nature of the relationship of the parties.  The motion was denied. (T 7 18-26).

Evidence of a Petitioner's other wrongful conduct may be admissible, but only if offered for a proper purpose under MRE 404(b), if relevant, under MRE 402 and if its probative value is not outweighed by the danger of unfair prejudice under MRE 403. Relevant similar acts evidence is inadmissible if offered to show the criminal propensity of the Petitioner and to establish that he acted in conformity with that propensity. UNITED STATES v MEDICO, 557 F. 2d 309 (1997); WALKER v UNITED STATES, 490 F. 2d 683 (1974).

Prosecutorial misconduct cannot be predicated on a prosecutor's good faith effort to admit evidence. WASHINGTON v HOFBAUER, 228 F. 3d 689 (6th Cir 2000). In determining the intent behind a prosecutor's questions, a reviewing court looks to objective facts and circumstances. UNITED STATES v KREBS, 788 F. 2d 1166 (6th Cir 1986).

Prosecutor had an affirmative obligation to adhere to trial court's ruling and to the rules of evidence. If this had been unexpected and an unwelcome comment, a prudent prosecutor would had said as much and asked that the testimony be stricken. Instead, Prosecutor deliberately elicited testimony and then argued it was justified. In this instance, Defense Counsel correctly argued that this was prior bad acts testimony injected for the sole purpose of convincing the jury that Petitioner was acting in conformity with his propensity for illegal behavior. This testimony is prohibited in accordance with MRE 404(b), MEDICO supra., and UNITED STATES v RAVICH, 421 F. 2d 1196 (1970).

DISCUSSION

_____

Michigan Court Of Appeals failed to consider the fact Prosecution went against Trial Court's ruling not to elicit testimony in order to show prior bad acts. Under the circumstances, Michigan Court Of Appeals based its denial on unreasonable determination of facts. Prosecutorial misconduct is evident and upon review by this Court, will emerge. As the Court determined in WASHINGTON v HOFBAUER, supra and BERGER v UNITED STATES, supra, Prosecution presented facts not in evidence nor had anything to do with the case before the jury. Prosecution was well aware of the question and well aware of the answer. Should this Court review in light of testimony, one factor must be considered when reviewing Prosecution's line of questions. Prosecution asked Jovan Sly how he knew Petitioner. Sly replied we are "home boys and we do things together. Prosecution did not ask "What sort of things?" Or "Other crimes?" because that would be a very blatant violation of Trial Court's ruling. Instead, Prosecution underhandedly asked "So when he picked up the phone and called you and said I got a lick, that was usual or unusual?" (T 7 17). That line of questioning was improper and against Trial Court's ruling, due to the fact that Sly referring to doing things together did not necessarily have to mean criminal activity. Prosecution was the one who placed in the jury's mind that Petitioner was guilty of other bad acts so therefore Petitioner had the propensity to commit the crime he was on trial

26

for.  In  accordance  with  FRE  404(b)  and  UNITED  STATES  v  RAVICH
supra.,  Petitioner  moves  this  Honorable  Court  to  issue  Writ  of
Habeas  Corpus,  remand  Petitioner  for  new  trial.

## ARGUMENTS IN SUPPORT

### V

**THE TRIAL COURT VIOLATE APPELLANT'S DUE PROCESS RIGHTS BY DENYING A MISTRIAL WHERE THE PROSECUTOR REPEATEDLY ELICITED IMPROPER TESTIMONY DESIGNED TO PREJUDICE APPELLANT?**

### Issue Preservation and Standard of Review

———

The issue was preserved by Defense Counsel's timely motion for mistrial, (T8 110-126; T9 28-62). The abuse of discretion standard of review applies to a trial court's decision on a defense motion for mistrial. ANCHOR v O'TOOLE, 94 F. 3d 1014 (6th Cir 1996). The de novo standard of review applies to prosecutorial misconduct claims. UNITED STATES v CLARK, 982 F. 2d 965 (6th Cir 1993).

The Court determined a prosecutor's leading questions may require reversal where some prejudice or patterns of eliciting inadmissible testimony are shown. UNITED STATES v YOUNG, 470 US 1; 105 S. Ct 1038; 84 L. Ed2d 1 (1985); UNITED STATES v BLANDFORD , 33 F. 3d 685 (6th Cir 1994).

In the case at bar, throughout testimony of jailhouse informant David Jose, Prosecution deliberately posed leading questions (T8 101, 106; T9 27) and questions designed to elicit inadmissible hearsay and speculative responses (T8 99; T9 14, 20, 22, 23, 28). Defense Counsel objected then moved Trial Court for a mistrial on the basis of Prosecution's flagrant deliberate line of leading questions. Although all of the above objections were sustained, the damage was done. Prosecution's questions

improperly suggested that David Jose gave a statement to the FBI, and that Petitioner made a custodial statement to the police. Upon a complete review of record, this Court would find that under these circumstances, the reasonable probability that Prosecutor's deliberate, improper line of questioning influenced the jury's decision as to who to believe. U.S. v BARILE, 286 F. 3d 749 (2002) citing KUNGYS v UNITED STATES, 485 US 759; 108 S. Ct 1537; 99 L. Ed2d 839 (1998). Trial Court's denial of Defense Counsel's motion for mistrial was error due to the fact Prosecution's flagrant misconduct requires reversal. BLANDFORD, supra.


## DISCUSSION

Defense Counsel motioned Trial Court for mistrial claiming prosecutorial misconduct. Trial Court denied motion. On appeal, Michigan Court of Appeals affirmed Trial Court's denial. It is evident Michigan Court of Appeals failed to review record in its entirety regarding this issue. Had this issue been examined, prosecutorial misconduct would have emerged throughout Direct Examination of David Jose by Prosecution. Petitioner recognizes Direct Examination is extensive (See Trial Transcript dated December 20, 2006, Pages 11-64) requiring more than a cursory review, but this issue must be examined in its entirety due to the many misconducts committed by Prosecution.

Record is clear and reveals that Prosecution posed leading questions, a fact to which she admitted to. (Page 22, line 17, elicited testimony which gave the impression Petitioner made a statement to police (Page 18, lines 20-23; Page 20, lines 11-13), constantly referred to testimony David Jose gave "yesterday", referred to notes she never produce as evidence before the jury and when Trial Court questioned her Prosecution offered a poor excuse by stating "In my simple mind." (Page 32, lines 20-21). Misconduct was objected to by Defense Counsel.

Recognizing the extent of record (Pages 11-64) involving Direct Examination by Prosecution and the fact that a cursory review would not suffice, Petitioner brings this Court's attention to the fact: "The determination of whether a prosecutor's behavior constituted prejudicial error must be made in the context of whole trial." UNITED STATES v YOUNG, 470 US 1; 105 S. Ct 1038; 84 L. Ed2d 1 (1985). Prosecution accumulated numerous errors requiring reversal during Direct-Examination of David Jose. So many, that Petitioner would exhaust this Honorable Court attempting to bring the Court's attention to each one. Therefore, Petitioner requests this Court review de novo, the issue on record at bar in its entirety (Pages 11-64), in order for this Court to discover for itself, prosecutorial misconduct throughout Direct Examination. Michigan Court of Appeals is in error for failing to examine record in its entirety, thereby rendering a decision based on an unreasonable determination of facts in light of evidence presented.

For reasons stated herein, Petitioner requests this Court issue writ of habeas corpus to remand for new trial absent prosecutorial misconduct.

30